# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**ANDREW M. MODRO,**

      **Plaintiff,**

                                         **Civil Action 2:18-cv-900**
                                         **Judge George C. Smith**
      **v.**                                **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Andrew M. Modro ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income.   This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Response in Opposition (ECF No. 18), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF No. 11).   For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.     BACKGROUND

Plaintiff protectively filed his application for supplemental security income on February 20, 2015.   In his application, Plaintiff alleged a disability onset of February 15, 2007. Plaintiff's application was denied initially on July 8, 2015, and upon reconsideration on November 12, 2015.   Plaintiff sought a hearing before an administrative law judge.

Administrative Law Judge William Diggs ("ALJ") held a video hearing on October 25, 2017, at which Plaintiff, represented by counsel, appeared and testified. Vocational expert William Cody (the "VE") also appeared and testified at the hearing. On December 6, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On June 19, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In his Statement of Specific Errors (ECF No. 13), Plaintiff contends that the ALJ's step three findings and residual functional capacity ("RFC") assessment are not supported by substantial evidence because the ALJ failed to properly assess the medical opinions of Gary S. Sarver, Ph.D., and Tony Goudy, Ph.D. More specifically, Plaintiff alleges that despite assigning "great" weight to the opinion of consultative examiner Dr. Sarver, the ALJ failed to account for certain limitations contained in his opinion or explain why those limitations were omitted from Plaintiff's RFC. Plaintiff further alleges that the ALJ failed to apply the appropriate factors when assessing Dr. Goudy's opinion and provide adequate reasons for rejecting his opinion.

## II.    RELEVANT MEDICAL EVIDENCE

### A.  Consultative Examiner, Gary S. Sarver, Ph.D.

At the request of the Division of Disability Determination, consultative examiner Gary S. Sarver, Ph.D., evaluated Plaintiff on June 5, 2015, to determine Plaintiff's current level of psychological functioning. (R. at 259.) Dr. Sarver diagnosed Plaintiff with unspecified personality disorder with mixed (histrionic) personality features and unspecified depressive

disorder.  (R. at 264.)

Dr. Sarver concluded that Plaintiff had several non-exertional limitations in his ability to perform work.  With respect to understanding, remembering, and carrying out instructions, Dr. Sarver opined that Plaintiff's "apparent low average level of intellectual functioning suggests that he should have no particular difficulty in understanding, remembering, or carrying out simple job instructions.  He is likely to experience more difficulties as the job instructions become increasingly complex."  (R. at 265.)  Dr. Sarver further opined that Plaintiff's "personality disorder and concomitant poor coping skills, and associated low frustration threshold, is likely to further attenuate his capacity to carry out complex job instructions."  (*Id.*)

With respect to Plaintiff's abilities and limitations in maintaining attention and concentration and persistence and pace, Dr. Sarver stated that "[t]here were no significant indications noted during the interview of his having difficulty with attentional pace or persistence."  (R. at 265.)  Dr. Sarver noted that Plaintiff had no difficulty with digit or word recall; was able to recall an extensive work, personal, and family history; and was able to engage in "his portion of the activities of daily living independently and adequately."  (*Id.*)  Dr. Sarver opined, however, that Plaintiff's "personality disorder and accompanying affective instability is likely to episodically attenuate his capacity to perform multistep tasks."  (*Id.*)

Regarding Plaintiff's abilities and limitations in responding appropriately to supervision and to coworkers, Dr. Sarver found that Plaintiff "has manifested a history of intense and unstable interpersonal relationships," and that "[i]t is likely that he will eventually encounter contentious relationships with supervisors and coworkers in the work setting."  (*Id.*)  He further found that Plaintiff "has unrealistic expectations to be taken care of by others and

becomes broodingly resentful when these unrealistic needs are not met." (*Id.*)

Finally, Dr. Sarver found that Plaintiff has limitations in his ability to respond appropriately to work pressures. (R. at 265.) Dr. Sarver opined that Plaintiff's "personality disorder suggests that he is likely to have difficulty organizing, structuring, and working towards goals," and that "[h]e is likely to have difficulty containing his anger, managing his frustration, and controlling his impulses." (*Id.*) He further opined that Plaintiff "is likely to depend upon other people and/or situations to structure life for him," and that "[h]is personality disorder and concomitant poor coping skills makes it difficult for him to appropriately self-comfort and adaptively manage and contain his anger, frustrations, and anxieties." (*Id.*) Dr. Sarver found that "[t]his makes it difficult for him to adaptively manage normative work stressors." (*Id.*) He further noted that Plaintiff's "usual remedy for work stress is to avoid the stress of employment or to exit the job situation quickly." (*Id.*)

**B. Examining Psychologist, Tony Goudy, Ph.D.**

Tony Goudy, Ph.D., examined Plaintiff on July 14, 2017, and October 10, 2017, to evaluate whether psychological factors were affecting Plaintiff's ability to pursue substantial gainful employment. (R. at 292.) Dr. Goudy diagnosed Plaintiff with unspecified personality disorder, persistent depressive disorder, and generalized anxiety disorder. (R. at 297.)

Dr. Goudy opined that Plaintiff has an impairment or combination of impairments that meets one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, explaining as follows:

> [Plaintiff] should be assessed under 12.08 Personality and impulse control disorders. I believe primarily he should be assessed under A.4. Instability of interpersonal relationships. However, based on test results and his personal history, I believe he also could be assessed under A.2. Detachment from social

relationships, and A.6. Feelings of inadequacy.

[Plaintiff] should also be assessed under 12.04 Affective Disorders. Specifically, under A.1. A depressive disorder characterized by the following:

   a. Depressed mood
   b. Diminished interest in almost all activities
   c. Appetite disturbance with change in weight
   d. Sleep disturbance
   e. Observable psychomotor agitation or retardation
   f. Decreased energy
   g. Feelings of guilt or worthlessness
   h. Difficulty concentrating or thinking
   i. Thoughts of death or suicide

Additionally, [Plaintiff] should be assessed under 12.06 Anxiety-Related Disorders. Specifically, under A.1. Anxiety characterized by the following:

   a. Restlessness
   b. Easily fatigued
   c. Difficulty concentrating
   d. Irritability
   e. Muscle tension
   f. Sleep disturbance

(R. at 298-99.) With respect to the paragraph B criteria, Dr. Goudy found that Plaintiff had marked impairment in his ability to interact with others. (*Id.* at 299.) Dr. Goudy further found that Plaintiff had "no significant impairment [in his ability to maintain concentration, persistence, or pace] on mental status examination, but likely marked impairment with even mild stressors," and that Plaintiff had no significant impairment in his ability to understand, remember, or apply information, or to adapt or manage himself. (*Id.* at 299.) He concluded that "it would appear that [Plaintiff] meets a listing based on a combination of psychological factors." (*Id.*)

Dr. Goudy also assessed Plaintiff's mental RFC. (R. at 300-02.) Dr. Goudy opined that Plaintiff has marked impairment in his ability to relate to co-workers, deal with the public, interact with supervisors, and deal with work stresses. (R. at 301.) He found that Plaintiff has

mild impairment in his ability to function independently and maintain attention/concentration. (*Id.*)   He also found that Plaintiff has marked impairment in his ability to understand, remember, and carry out complex job instructions, and moderate impairment in his ability to understand, remember, and carry out detailed, but not complex job instructions, as well as simple job instructions.   (*Id.*)   Dr. Goudy further opined that Plaintiff has marked impairment in his ability to behave in an emotionally stable manner, relate predictability in social situations, and in his ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.   (*Id.* at 302.)

## C.   State-Agency Reviewing Psychologists, Robelyn Marlow, Ph.D., and Patricia Kirwin, Ph.D.

On July 6, 2015, state-agency reviewing psychologist Robelyn Marlow, Ph.D., assessed Plaintiff's mental capabilities and limitations.   (R. at 56.)   With respect to the paragraph "B" criteria, she opined that Plaintiff has mild limitations in activities of daily living and in maintaining concentration, persistence, or pace, and moderate limitations in maintaining social functioning.   (R. at 53.)

Dr. Marlow also assessed Plaintiff's RFC.   She found that he has no limitations in understanding or remembering, but that he "is likely to experience more difficulties as the job instructions become increasingly complex."   (R. at 54-55.)   She also found that Plaintiff has no sustained concentration and persistence limitations.   (R. at 55.)

Regarding social interaction limitations, Dr. Marlow opined that Plaintiff was moderately limited in his ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers

without distracting them or exhibiting behavioral extremes. (R. at 55.) She also parroted Dr. Sarver's opinions, explaining that Plaintiff will likely encounter contentious relationships with supervisors and coworkers and that he "has unrealistic expectations to be taken care of by others and becomes broodingly resentful when these unrealistic needs are not met." (R. at 55.)

With respect to his ability to adapt, Dr. Marlow found that Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. (R. at 56.) In explaining her findings, Dr. Marlow again repeated Dr. Sarver's opinion:

> His personality disorder suggests that he is likely to have difficulty organizing, structuring, and working towards goals. He is likely to have difficulty containing his anger, managing his frustration, and controlling his impulses. He is likely to depend upon other people and/or situations to structure life for him. His personality disorder and concomitant poor coping skills makes it difficult for him to appropriately self-comfort and adaptively manage and contain his anger, frustration, and anxieties. This makes it difficult for him to adaptively manage normative work stressors. His usual remedy for work stress is to avoid the stress of employment or to exit the job situation quickly.

(R. at 56.)

On reconsideration, state-agency reviewing psychologist Patricia Kirwin, Ph.D., generally adopted the RFC findings of Dr. Marlow, but further opined that Plaintiff "can interact briefly and occasionally in situations that do not require more than superficial contact with coworkers, supervisors, and the general public," and that Plaintiff "retains the ability to complete tasks in an environment in which changes are infrequent and explained in advance." (R. at 67-69.)

### III.   THE ADMINISTRATIVE DECISION

On December 6, 2017, the ALJ issued a decision finding that Plaintiff was not disabled

within the meaning of the Social Security Act. (R. at 10-20.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 20, 2015, the application date. (*Id.* at 12.) At step two, the ALJ found that Plaintiff had the severe impairments of affective disorder, anxiety disorder, personality disorder, and autism spectrum disorder. (*Id.*) At step three of the sequential process, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 13-15.) The ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is able to understand, remember and carry out simple, routine tasks. The claimant can have occasional superficial contact with supervisors, coworkers and the public,

---

1. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

with superficial meaning no over-the-shoulder supervision; no tandem assignments; and no sales type transactions or customer-service interaction with the public. The claimant can tolerate occasional changes in a work setting and can meet no fast-pace production quotas.

(*Id*. at 16.) In assessing Plaintiff's RFC, the ALJ assigned "great" weight to the opinion of Dr. Sarver, concluding that his findings were consistent with the longitudinal record. (R. at 17.) The ALJ also assigned "some" weight to the opinions of Dr. Goudy, and "some" weight to the opinions of the state-agency reviewing psychologists. (R. at 17-18.)

At step four, the ALJ found that Plaintiff has no past relevant work. (R. at 19.) At step five, relying on the VE's testimony, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy. (*Id*. at 19.) The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. (*Id*. at 20.)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court

must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.    ANALYSIS

As set forth above, in his Statement of Errors, Plaintiff asserts that the ALJ erred in his consideration of the medical opinions of Drs. Sarver and Goudy. (ECF No. 13.) For the reasons that follow, the undersigned disagrees and **RECOMMENDS** that Plaintiff's Statement of Errors be **OVERRULED**.

## A.  The ALJ's Consideration of Dr. Sarver's Opinions

Plaintiff contends that despite assigning "great" weight to the opinion of consultative examiner Dr. Sarver, the ALJ failed to account for certain limitations contained in his opinion or explain why they were omitted from Plaintiff's RFC. More specifically, Plaintiff contends that the ALJ failed to address or accommodate the following limitations:

1.  Plaintiff "is likely to depend upon other people and/or situations to structure life for him;"

2.  Plaintiff has difficulty "appropriately self-comfort[ing] and adaptively manag[ing] and contain[ing] his anger, frustrations, and anxieties;"

3.  Plaintiff "has unrealistic expectations to be taken care of by others and becomes broodingly resentful when these unrealistic needs are not met;"

4.  Plaintiff has difficulty "adaptively manag[ing] normative work stressors;" and

5.  Plaintiff "is likely to have difficulty organizing, structuring, and working towards goals."

(Pl.'s Statement of Errors at 6, ECF No. 13 (citing Dr. Sarver's Opinion, R. at 265).)

Defendant counters that an ALJ can utilize a medical opinion without accepting all of the limitations contained therein. Defendant also contends that if the ALJ erred in failing to address Dr. Sarver's opinions, the error was harmless because the ALJ reasonably accommodated them in Plaintiff's RFC. (Def.'s Mem. in Opp. at 5, ECF No. 18.) The undersigned agrees with the Commissioner and finds Plaintiff's first contention of error to be without merit.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

In assessing Plaintiff's RFC, the ALJ considered the opinion of consultative examiner Dr. Sarver. The ALJ assessed "great" weight to Dr. Saver's opinion, explaining as follows:

> As for the opinion evidence, the undersigned gives great weight to the assessment of Dr. Sarver, who performed a medical consultative examination of the claimant. First, Dr. Sarver indicated that the claimant could understand, remember and carry out simple job instructions but would experience more difficulty with complex instructions. Although Dr. Sarver did not notice attention, pace or persistence issues during the examination, he predicted that the claimant's mental impairments would limit the claimant's ability to perform multistep tasks. Citing the claimant's unrealistic expectations of other people, Dr. Sarver anticipated that the claimant would experience contentious relations with coworkers and supervisors. Finally, in light of the claimant's emotional volatility, Dr. Sarver opined that the claimant would have difficulty organizing, structuring and working toward goals (3F/8). Notably, Dr. Sarver's findings comport with the longitudinal record. Specifically, the claimant performed unremarkably during multiple mental-status examinations, performed by Dr. Sarver and Dr. Goudy (3F/5-6 and 8F/6). Consistent with this performance, the claimant only briefly attended mental-health treatment and instead largely relied on psychotropic medications (see 1F, 2F and 4F-7F). Therefore, because the record supports Dr. Sarver's assessments so well, the undersigned has accounted for the restrictions that Dr. Sarver espoused for the claimant in the residual functional capacity.

(R. at 17.) The ALJ included the following non-exertional limitations in Plaintiff's RFC:

> The claimant is able to understand, remember and carry out simple, routine tasks. The claimant can have occasional superficial contact with supervisors, coworkers and the public, with superficial meaning no over-the-shoulder supervision; no tandem assignments; and no sales type transactions or customer-service interaction with the public. The claimant can tolerate occasional changes in a work setting and can meet no fast-pace production quotas.

(R. at 16.)

As a preliminary matter, the Commissioner is correct that the ALJ was not required to include all of the "limitations" contained in Plaintiff's RFC verbatim, particularly where they were not stated in vocationally relevant terms. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt [it] verbatim; nor is the ALJ required to adopt the . . .

limitations wholesale."); *see also Tucker v. Berryhill*, No. 3:16-CV-1337, 2017 WL 6442142, at *5 (M.D. Tenn. Dec. 18, 2017) (explaining that "[t]he ALJ is tasked with converting medical statements into vocationally relevant residual functional capacity findings.")   Further, an ALJ is not required to use "the exact language of [the medical] professionals" when incorporating limitations in the RFC.   *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436 (6th Cir. 2014) (explaining that "[a]lthough the ALJ did not describe Smith–Johnson's limitations using the exact language of those professionals, substantial evidence demonstrates that the ALJ adequately portrayed her limitations in his RFC and the hypothetical question to the VE."). Indeed, the ALJ is ultimately responsible for assessing Plaintiff's RFC.   *See* 20 C.F.R. §§ 404.1527(e), 416.927(e).

Here, the ALJ assessed great weight to Dr. Sarver's opinions and reasonably converted and incorporated those opinions into vocationally relevant terms in Plaintiff's RFC.   In the area of concentration, persistence, and pace, Dr. Sarver found "no significant indications" of Plaintiff "having difficulty with attentional pace or persistence," but opined that Plaintiff is "likely to episodically attenuate his capacity to perform multistep tasks."   (R. at 265.)   The ALJ accommodated these findings—and assessed even greater limitations—by finding that Plaintiff is limited to performing simple, routine tasks, tolerate occasional changes in the work setting, and can meet no fast-pace production quotas.   (R. at 16.)

With respect to Plaintiff's ability to respond appropriately to supervisors and others, Dr. Sarver opined that Plaintiff "will likely encounter contentious relationships with supervisors and coworkers in the work setting," and that he has "unrealistic expectations to be taken care of by others and becomes broodingly resentful when these unrealistic needs are not met."   (R. at 265.)

13

The ALJ reasonably accounted for these findings in the RFC by limiting Plaintiff to "occasional superficial contact with supervisors, coworkers and the public, with superficial meaning no over-the-shoulder supervision; no tandem assignments; and no sales type transactions or customer-service interaction with the public." (R. at 16.) The undersigned is also not convinced that the ALJ erred in failing to discuss or include Dr. Sarver's finding that Plaintiff has an "unrealistic expectation to be taken care of by others." Not only is this opinion vague, but Plaintiff neither explained what additional vocationally relevant functional limitations should have been incorporated or otherwise offered any evidence or authority suggesting that such an opinion requires additional RFC limitations. *See Ware v. Comm'r of Soc. Sec.*, No. 2:17-CV-01015, 2019 WL 696945, at *11 (S.D. Ohio Feb. 20, 2019) ("where a plaintiff challenges an ALJ's mental-health related findings but does not explain what limitations the ALJ erred in excluding or point to any evidence from within the applicable period suggesting that she had additional mental-health related restrictions, then the plaintiff's challenge is meritless" (citing *McNier v. Comm'r of Soc. Sec.*, 166 F. Supp. 3d 904, 914 (S.D. Ohio Feb. 23, 2016).).

The ALJ also reasonably accommodated Dr. Sarver's findings regarding Plaintiff's ability to respond appropriately to work pressures. Plaintiff contends that the ALJ failed to account for or explain why he omitted Dr. Sarver's findings that Plaintiff "is likely to depend upon other people and/or situations to structure life for him;" has difficulty "appropriately self-comfort[ing] and adaptively manag[ing] and contain[ing] his anger, frustrations, and anxieties;" has difficulty "adaptively manag[ing] normative work stressors;" and "is likely to have difficulty organizing, structuring, and working towards goals." (Pl.'s Statement of Errors at 6-7, ECF No. 13 (citing R. at 265).) The undersigned finds that the ALJ appropriately considered and

reasonably accommodated these opinions. Although the ALJ did not specifically discuss each of Dr. Sarver's conclusions, the ALJ's analysis makes clear that he considered Dr. Sarver's opinion as a whole and converted his findings into vocationally relevant RFC findings. (*See* ALJ's Decision, R. at 17 (stating "because the record supports Dr. Sarver's assessments so well, the undersigned has accounted for the restrictions that Dr. Sarver espoused for the claimant in the residual functional capacity").) As set forth above, the ALJ restricted Plaintiff to simple, routine work; occasional and superficial interaction with others; no fast-pace production quotas; and only occasional changes in work. (R. at 16.) Given this restrictive RFC assessment, Plaintiff's work day will be structured for him, as he will be completing simple, routine tasks with only occasional changes and no fast-pace production quotas. Additionally, Plaintiff's need to adapt to work stressors will be minimized because Plaintiff is limited to simple, routine tasks without fast-pace production quotas; occasional, superficial interaction with others; and only occasional changes in the work place. *See e.g., Smith-Johnson*, 579 F. App'x at 437 ("A functional limitation to routine and repetitive tasks, and to limited interaction with the general public, provides structure and monotony so as to reduce work changes to which Smith–Johnson would have to respond."). The undersigned therefore finds that that the ALJ reasonably converted Dr. Sarver's findings into vocationally relevant terms. Further, Plaintiff once again fails to identify what additional vocationally relevant functional limitations should have been incorporated and has further failed to point to any evidence or authority that would require that such opinions require additional limitations.

Moreover, substantial evidence supports the ALJ's interpretation of Dr. Sarver's findings and ultimate RFC assessment. For example, the ALJ considered that Plaintiff can perform a

range of household tasks and helps care for his autistic child. (R. at 15.) He concluded that "this illustrates that the claimant would not have difficulty adapting to environmental changes or demands placed upon the claimant." (*Id.*) The ALJ further considered that

> the claimant performed unremarkably during multiple mental-status examinations, performed by Dr. Sarver and Dr. Goudy (3F/5-6 and 8F/6). Consistent with this performance, the claimant only briefly attended mental-health treatment and instead largely relied on psychotropic medications (see 1F, 2F and 4F-7F). Therefore, because the record supports Dr. Sarver's assessments so well, the undersigned has accounted for the restrictions that Dr. Sarver espoused for the claimant in the residual functional capacity.

(R. at 17.) Based on the foregoing, the undersigned finds that substantial evidence supports the ALJ's interpretation of Dr. Sarver's opinions and ultimate RFC assessment.

In summary, the undersigned finds that the ALJ appropriately considered and reasonably accommodated Dr. Sarver's opinions in Plaintiff's RFC. Additionally, Plaintiff failed to explain what additional non-exertional limitations should have been included in the RFC or offer any authority that such opinions require additional limitations or point to any evidence in the record that supports additional limitations. His challenges to the ALJ's consideration of Dr. Sarver's opinions therefore lack merit. *See e.g. Ware*, 2019 WL 696945, at *11 (finding plaintiff's contention of error meritless where plaintiff failed to explain what limitations the ALJ erred in excluding or to point to evidence demonstrating additional non-exertional restriction). Accordingly, the undersigned **RECOMMENDS** that Plaintiff's first contention of error be **OVERRULED**.

## B. The ALJ's Consideration of Dr. Goudy's Opinion

Plaintiff next contends that the ALJ erred by failing (1) to apply the appropriate regulatory factors in assessing Dr. Goudy's opinion and (2) to state adequate reasons for

rejecting Dr. Goudy's opinions.   (Pl.'s Statement of Errors at 7-13, ECF No. 13.)   The

Commissioner counters that the ALJ reasonably discredited and assigned only "some" weight to

Dr. Goudy's opinions.   The undersigned agrees with the Commissioner and finds Plaintiff's

second contention of error to be without merit.

In evaluating a claimant's case, the ALJ must consider all medical opinions that he or she

receives.   20 C.F.R. § 416.927(c); *see also* SSR 96–8p 1996 WL 374184, at *7 (July 2, 1996)

("The RFC assessment must always consider and address medical source opinions.").   The

applicable regulations define medical opinions as "statements from physicians and psychologists

or other acceptable medical sources that reflect judgments about the nature and severity of your

impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite

impairment(s), and your physical or mental restrictions."   20 C.F.R. § 416.927(a)(2).

"When the opinion comes from a physician who treated the claimant, the ALJ must 'give

good reasons' in his written decision for the weight he assigns it."   *Stacey v. Comm'r of Soc.

Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2); *Wilson v.

Comm'r of Soc. Sec.,* 378 F.3d 541, 544–45 (6th Cir.2004)).   Although the "good reason"

requirement does not apply where the medical source has not treated the claimant, *see Ealy v.

Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010), "the ALJ's decision still must say

enough 'to allow the appellate court to trace the path of his reasoning.'"   *Stacey*, 451 F. App'x

at 519 (quoting *Diaz v. Chater,* 55 F.3d 300, 307 (7th Cir.1995)).

Indeed, regardless of the source of a medical opinion, in weighing the opinion, the ALJ

must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment

relationship, supportability of the opinion, consistency of the opinion with the record as a whole,

and the specialization of the source.   20 C.F.R. § 416.927(c).   In addition, the regulations

provide that where, as here, the ALJ does not assign controlling weight to a treating physician,

he or she must explain the weight assigned to the opinions of the medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(c).

Contrary to Plaintiff's contention, however, the ALJ is not required to explicitly address

all of the factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence

within the written decision.   *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir.

2010) (indicating that, under the good reason rule, an ALJ is not required to explicitly address all

of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence

within the written decision).

As discussed above, the ALJ assigned "some" weight to the opinion of Dr. Goudy.   (R.

at 17-18.)    Although Plaintiff maintains that the ALJ failed to consider the relevant factors or

provide adequate reasons for assigning "some" weight to Dr. Goudy's opinion, the ALJ provided

the following lengthy discussion of how he arrived at his determination:

> The undersigned gives some weight to the assessment of Dr. Goudy, who examined the claimant in 2017 (8F).   Dr. Goudy concluded that the claimant met multiple listings under section 12.00.   To substantiate this claim, Dr. Goudy indicated that the claimant faced a marked impairment in interacting with others.   Dr. Goudy also asserted that although the claimant exhibited no significant impairment during the mental-status examination in concentrating, persisting or maintaining pace, the claimant would likely face a marked impairment in this area when faced with even mild stressors (8F/9, 11-12).

Several considerations detract from the weight this assessment warrants. Notably, Dr. Goudy examined the claimant at the request of the claimant's attorney, just months before the hearing (see 8F/2). As if to justify the claimant's long hiatus from treatment, Dr. Goudy asserted that individuals with the same impairments as the claimant often abruptly terminate treatment because of a tendency to grow frustrated with limited progress. Specifically, Dr. Goudy likened this to the claimant's cessation of treatment at Hopewell Health Centers (8F/7). However, the claimant reportedly discontinued this treatment because of the admitted progress the claimant had made around that time (1F see also 8F/3). Furthermore, Dr. Goudy relied heavily on the results of diagnostic assessments in formulating these limitations, which raises questions as to how closely Dr. Goudy tailored these restrictions to the claimant's capabilities as opposed to recommending limitations for a hypothetical individual with the claimant's psychological profile (9F). In fact, Dr. Goudy's own findings conflict with the finding of marked limitation in concentrating, persistence and maintaining pace. Although Dr. Goudy observed no significant impairment in claimant's ability to concentrate, persist or maintain pace during the examination, Dr. Goudy nevertheless predicted that the claimant would exhibit a marked impairment in this regard when faced with stress. This confirms that Dr. Goudy relied too heavily on a psychological profile and too little on the claimant's actual presentation and demonstrable capabilities.

(R. at 17-18.) Notably, the undersigned agreed with Dr. Goudy that Plaintiff had marked limitations in his ability to interact with others. (ALJ's Decision, R. at 14 ("In interacting with others, the claimant has a marked limitation.")

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Goudy's opinion.[2] The ALJ articulated his reasons for affording only "some" weight to Dr.

---

2 Plaintiff does not argue that Dr. Goudy was a treating psychologist. Furthermore, to qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502. A Court must determine whether or not an ongoing treatment relationship exists at the time the physician's opinion is rendered. *Kornecky v. Comm'r of Soc. Sec.*, No. 04-2171, 167 F. App'x 496, 506 (6th Cir. Feb. 9, 2006) ("[T]he relevant inquiry is . . . whether [claimant] had the ongoing relationship with [the physician] *at the time he rendered his opinion*. [V]isits to [the physician] *after* his RFC assessment could not retroactively render him a treating physician at the time of the assessment."); *see also Yamin v. Comm'r of Soc. Sec.*, 67 F. App'x 883, 885 (6th Cir. 2003) ("These two examinations did not give [the physician] a long term overview of [the claimaint's] condition."). This is because "the rationale of the treating physician doctrine simply does not apply" where a physician issues an opinion after a single examination. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Here, Dr. Goudy examined

Goudy's opinion, concluding that it was not entirely supported by or consistent with the record evidence.   (R. at 17-18); *see* 20 C.F.R. § 404.1527(c)(2) (identifying "supportability" and "consistency" with the record as a whole as relevant considerations when evaluating a treating physician's opinion).

Substantial evidence supports the ALJ's assessment of Dr. Goudy's opinion.   First, contrary to Plaintiff's contention, the ALJ appropriately considered that Dr. Goudy examined Plaintiff at the request of his attorney just months before the hearing.   *See* 20 C.F.R. § 416.927(c) (identifying the examining and treatment relationship as relevant factors for an ALJ to consider in weighing a medical opinion).   Thus, although the ALJ cannot reject Dr. Goudy's opinion simply because Plaintiff was referred to him by counsel, it was appropriate for him to consider the extent of the treatment relationship between Plaintiff and Dr. Goudy.

Next, the ALJ reasonably concluded that Dr. Goudy "relied too heavily upon a psychological profile and too little on the [Plaintiff's] actual presentation and demonstrable capabilities."   (R. at 18.)   Although Plaintiff is correct that a psychiatrist may rely upon diagnostic techniques in forming his opinion, *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989), the ALJ is permitted to discount an opinion if it is not supported by the objective evidence in the record, *see Wilson*, 378 F.3d at 544 (explaining that "supportability of the opinion" and "consistency of the opinion with the record as a whole" are factors the ALJ must consider in determining the weight to give a medical opinion).   Here, the ALJ found that several of Dr. Goudy's opinions were based on a diagnostic profile instead of the actual evidence in the

_____

Plaintiff two times in order to issue an opinion for his Social Security case.   Accordingly, the treating physician doctrine does not apply to Dr. Goudy.

20

record.   (R. at 18.)   For example, Dr. Goudy attempted to justify Plaintiff's long hiatus from treatment by generally asserting that "individuals with the same impairments as the claimant often abruptly terminate treatment because of a tendency to grow frustrated with limited progress."   (R. at 18.)   The ALJ reasonably observed, however, that Dr. Goudy's generalization was inconsistent with Plaintiff's treatment records in this case, which reflected instead that Plaintiff discontinued treatment because of progress in his condition.   (R. at 18); (*See, e.g.*, R. at 227 (treatment notes providing that "Client feels he has made good progress this year, to the point he can concentrate on other areas").)

The ALJ also reasonably observed and considered that Dr. Goudy's own findings on mental examination conflicted with his opinion that Plaintiff would have marked limitation in concentration, persistence, and pace when faced with stress.   (R. at 18.)   Indeed, on mental status examination, Dr. Goudy observed no significant impairment in Plaintiff's ability to concentrate, persist, or maintain pace, and noted that Plaintiff was able to recite serial sevens without error.   (R. at 296, 298.)   Under such circumstances, the ALJ reasonably discounted Dr. Goudy's speculation that Plaintiff would likely have marked limitations in this area when faced with stress.   (R. at 18.)   Additionally, the ALJ's broader discussion of Plaintiff's ability to concentrate, persist, and maintain pace further supports discounting Dr. Goudy's opinion.   (*See* R. at 15, 17.)   For example, Dr. Sarver consistently found "no significant indications" of Plaintiff "having difficulty with attentional pace or persistence" on examination.   (R. at 265.) The ALJ also considered that Plaintiff performs household tasks and cares for his autistic son, which "illustrates that [Plaintiff] would not have difficulty adapting to environmental changes or demands placed upon [him]."   (R. at 15.)   Accordingly, the undersigned finds that substantial

evidence supports the ALJ's decision to discount Dr. Goudy's opinion that Plaintiff suffers from marked limitations in his ability to concentrate, persist, or maintain pace.

In summary, the undersigned finds no error in the ALJ's consideration and weighing of Dr. Goudy's opinion. Although Plaintiff points to some evidence that could support an alternative finding, the ALJ's findings fell within the ALJ's permissible "zone of choice." *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). Accordingly, the undersigned **RECOMMENDS** that Plaintiff's second contention of error be **OVERRULED**.

## VI. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations

to which objection is made.   Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.   28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


   */s/ Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE